## T. J. Christmann, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 17, 1916. Rehearing denied May 25, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Action by T. J. Christmann, administrator, of the estate of Philip Christmann, deceased, plaintiff, against Illinois Central Railroad Company, defendant, for damages for the death of plaintiff's decedent caused by being struck by defendant's engine while plaintiff was proceeding longitudinally across a highway on defendant's track. From a judgment for plaintiff, defendant appeals.

The declaration consists of three counts. The first count charged that defendant was driving a certain locomotive engine in a southeasterly direction in the City of Belleville towards the crossing on Jackson street in said city without any light on the front end thereof, and in consequence thereof, plaintiff's intestate while attempting to go over said crossing at said place was struck by said engine, receiving an injury from which he afterwards died.

The second count relied on an ordinance of said city limiting the speed in said city of passenger trains to ten miles per hour, and other trains to six miles per hour, and charged that defendant at about 10:30 p. m. on the evening in question drove a certain locomotive engine on its said tracks towards said crossing at a greater rate of speed than six miles per hour, to wit, at twenty miles per hour, in violation of said ordinance, and that by reason whereof said engine struck

plaintiff's intestate and caused injuries to him from which he afterwards died.

The third count charged general negligence in the operation of said engine, resulting in injury to plaintiff's intestate as he was attempting to cross said track. Each of said counts alleged due care on the part of plaintiff's intestate at the time of said injury.

Jackson street in the City of Belleville runs north and south, and Tenth street east and west. Defendant's railroad runs in a northwesterly and southeasterly direction through said city at and near the point where it crosses Jackson street. At the intersection of Jackson and Tenth streets, on the southerly side of defendant's right of way, is located a combination saloon and residence. The south side of said building is on the north street line of Tenth street and, on said street line, runs to within about five feet of the west line of Jackson street. There are two doors to the saloon, one at the southeast corner on Tenth street and the other at the northeast corner.

Victor Christmann, the brother of plaintiff's intestate, lived on the southwesterly side of the railroad track about one hundred and sixty-five feet northwesterly from the intersection of the south line of the railroad right of way with Jackson street. There was a back gate leading from the rear of Victor Christmann's lot to the right of way, and nearly opposite this gate was a cross-over switch. On the evening of August 29, 1914, plaintiff's intestate, with one Julius Bingheim, spent the evening at the residence of his brother, Victor Christmann. A little after ten o'clock it was agreed that plaintiff's intestate should go to the saloon in question and obtain a bucket of beer for the company. He, with his brother, Victor Christmann, walked to the gate leading from the Christmann residence to the right of way of defendant's railroad. Plaintiff's intestate passed through the gate onto the right of way and turned in a southeasterly direction

down the right of way towards Jackson street.   His brother Victor returned to his house.   The evidence was not entirely clear as to whether plaintiff's intestate walked down the center of what is known as the southbound track of defendant's railroad, or whether he walked between said tracks and the fence.   However, it was conceded that later on, if not immediately, he got upon said southbound track on his way to the saloon.

Victor Christmann testified that after his brother entered the right of way of defendant's railroad he looked in a northwesterly direction, that at that time no train or engine could be seen.   This was the last time that Victor Christmann saw his brother until after the injury.   The only person who saw plaintiff's intestate after he left his brother Victor at the gate and passed onto the right of way was Lorane Christmann, a son of Victor Christmann, a boy about thirteen years of age, who testified that he was playing in the yard and that shortly after his uncle had passed through the gate on the right of way and started for the saloon, an engine came along from the northwest going in a southeasterly direction; that it stopped at the cross-over switch opposite his father's house and that the switch was thrown and the engine again started in a southeasterly direction.   He further testified that he leaped over the fence and started towards his uncle; that he ran all the way as he was fearful on account of his uncle's hearing not being good that he might be injured by said engine; that a short distance before his uncle reached Jackson street his uncle slowed up for the purpose of lighting his pipe, and that just before he reached him said engine struck him and knocked him down; that when he found him he was lying on the crossing at Jackson street between the rails of the southbound track.   He further testified that he immediately notified his father, Victor Christmann, who also in his testimony stated that at the

time he found his brother he was on the crossing at Jackson street between the rails of the southbound track.

The evidence disclosed that on account of obstructions shutting off the light from the electric lights, the crossing at Jackson street was dark. The evidence was sharply conflicting as to where plaintiff's intestate was when struck by the engine, whether at the crossing or twenty-five to thirty feet away on the railroad right of way. The evidence was also conflicting as to the speed of the engine as it approached Jackson street, whether a bell was ringing, whether a whistle was blown or other signal given, and whether the engine, which was being driven backward, had a light on its rear end.

Kramer, Kramer & Campbell, for appellant; John G. Drennan, of counsel.

T. M. Webb, for appellee.

Mr. Justice Boggs delivered the opinion of the court.

## Abstract of the Decision.

1. Railroads, § 733*—*when evidence sufficient to sustain finding that accident to pedestrian occurred on highway crossing.* In an action for damages for the death of a person who entered a railroad right of way in the nighttime a short distance from a highway crossing and proceeded in a southeasterly direction along such right of way towards such highway crossing and was found dead on such highway crossing, where the evidence was sharply conflicting as to where deceased was when struck by a backing engine, evidence *held* sufficient to sustain a finding that the accident occurred on the highway crossing.

2. Railroads, § 733*—*when evidence sufficient to sustain finding as to negligence in operation.* In an action for the death of a person who entered a railroad right of way in the nighttime a short distance from a street crossing, and proceeded in a southeasterly direction towards such street along the right of way and was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

struck by a backing engine at such street crossing, where the evidence was sharply conflicting as to whether the engine was proceeding at a speed exceeding that prescribed by a city ordinance, whether a bell was ringing, or whether the engine had a light on its rear end, evidence *held* sufficient to establish negligence in operation.

3. RAILROADS, § 656*—*when contributory negligence of deaf pedestrian walking on track in failing to look second time for approaching train question for jury.* In an action for the death of a person who entered a railroad right of way in the nighttime, 165 feet from a street crossing, and proceeded in a southeasterly direction to the street crossing where he was struck by a backing engine, when it appeared that he was somewhat deaf, and there was evidence that he looked down the track in a northwesterly direction and at such time no engine could be seen, but failed to again look around, and there was evidence that the engine had no light, that it was driven at an illegal speed, and that no bell or other warning was given on approaching the crossing, *held* that the contributory negligence of plaintiff was a question for the jury.

4. RAILROADS, § 661*—*when pedestrian traveling on railroad right of way at street crossing may assume that company will comply with law.* A pedestrian traveling upon a railroad right of way in a longitudinal direction upon the track, over a street crossing, may assume that the railroad company will perform the duty imposed upon it by law to carry proper lights on its engines at night, and to not operate engines without giving warning upon approaching a street crossing and in violation of speed ordinances.

5. RAILROADS, § 684*—*when pedestrian may cross street longitudinally on railroad track.* A pedestrian may cross a street longitudinally on a railroad track, irrespective of the fact that he committed a trespass prior to going upon the street in entering upon the railroad.

6. INSTRUCTIONS, § 137*—*when properly refused.* Instructions which do not state correct principles of law are properly refused.

7. INSTRUCTIONS, § 151*—*when requested instruction covered by given instructions properly refused.* Requested instructions fully covered by given instructions are properly refused.

8. RAILROADS, § 619*—*what constitutes a "train" within speed ordinance.* An engine being driven backward is a "train" within an ordinance limiting the speed of trains upon approaching street crossings.

---

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.